**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MING HUANG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : | No. 15-2407 (FLW) (LHG) **OPINION** |
| Plaintiffs, | : : | |
| v. | : : | |
| SONUS NETWORKS, INC., RAYMOND P. DOLAN, AND MARK T. GREENQUIST | : : : : | |
| Defendants. | : : | |

This matter comes before the Court on a motion by Defendants Sonus Networks, Inc. ("Sonus"), Raymond Dolan ("Dolan"), and Mark Greenquist ("Greenquist") (collectively "Defendants"), seeking transfer of this matter to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1404. For the following reasons, Defendants' motion to transfer venue is **GRANTED**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the Complaint, except where noted.[1] Sonus is a Delaware corporation with its principal place of business in Massachusetts. Compl. ¶ 7. Sonus provides network solutions for communications service providers and enterprises, bringing intelligence and security to real-time communications; it is traded on NASDAQ under the ticker "SONS." *Id.* Dolan is Sonus's Chief Executive Officer. *Id.* at ¶ 8. Greenquist is Sonus's Chief

---

[1] In considering a motion to transfer, the Court may consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

1

Financial Officer. *Id.* at ¶ 9. Sonus maintains an office in Freehold, New Jersey, which is dedicated to product engineering. Declaration of Matthew Thaler in Support of Motion to Transfer (dated July 1, 2015) [hereinafter "Thaler Decl."] ¶ 5. Thirty-three Sonus employees work at its Freehold office. *Id.*

The Complaint alleges that in October 2014 and February 2015, Greenquist made false and misleading statements in conference calls and press releases regarding a "number of good sized deals," which were expected to benefit Sonus's financial performance in the first quarter of 2015. *Id.* at ¶¶ 17-20. These statements allegedly misled investors to unreasonably expect that Sonus's revenue would be in the range of $74 million in the first quarter of 2015. *Id.* at ¶¶ 1, 17-19, 22. On March 24, 2015, Sonus allegedly released a press release that explained that it "no longer expect[ed] to receive certain orders [in the first] quarter that had been expected to be received at the back end of the first quarter," and, as a consequence, Sonus's revenue would instead be within the range of approximately $47 to $50 million dollars for the first quarter of 2015. *Id.* at ¶ 23. According to the Complaint, this news caused Sonus's share price to drop over 33% from its previous closing price on March 24, 2015, which damaged investors. *Id.* at ¶ 24. The alleged misleading statements, and the Q1 2015 revenue guidance, were made at Sonus' Westford, Massachusetts headquarters. Thaler Decl. ¶¶ 6-7.

On April 6, 2015, the named Plaintiff, Ming Huang, a resident of Michigan, filed suit on behalf of all purchasers of Sonus securities between October 23, 2014 and March 24, 2015, who were damaged by Defendants' false and misleading statements regarding Sonus's anticipated financial performance in the first quarter of 2015. Compl. at ¶ 1; Civil Cover Sheet, ECF No. 1-1. The Complaint asserts two counts: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, and (2) violation of Section 20(a) of The

Exchange Act. The Complaint requested that Huang be appointed as lead plaintiff and that The Rosen Law Firm, P.A. ("Rosen"), be designated as lead counsel. *Id.* at p. 14, ¶A. Ultimately, the named plaintiff (and several others) withdrew their applications for lead plaintiff status in favor of plaintiff Richard Sousa ("Sousa"). On September 21, 2015, this Court granted Sousa's motion to be appointed lead plaintiff and to appoint his attorney, the Rosen Law Firm, as lead counsel.[2]

On September 22, 2015, Defendants filed the instant motion, requesting that this action be transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Massachusetts.

## II.  DISCUSSION

Section 1404(a) of Title 28 of the U.S. Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). While the decision to transfer under section 1404(a) is within the sound discretion of the district court, the decision should not be made lightly. *See Gendrikrovs-Bayer v. Bellagio Hotel & Casino*, No. 14-6324, 2015 U.S. Dist. LEXIS 64984, 2015 WL 2383380, at *2 (D.N.J. May 15, 2015). Indeed, "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995). In that connection, a section 1404(a) motion to transfer venue should only be granted where transfer would "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Infanti v. Mandalay Bay Resort & Casino*, No. 13-6934, 2014 U.S. Dist. LEXIS 50927, 2014 WL 1430368, at *3 (D.N.J. Apr. 14, 2014) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

---

[2] The Court notes that Plaintiffs' opposition papers to the instant motion appear to have been erroneously filed on behalf of Ming Huang, rather than the lead plaintiff, Sousa.

Three factors must be considered when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive, and must be applied in an "individualized analysis . . . made on the unique facts presented in each case." *Id.* at 526-27 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80. As set forth below, a balance of the pertinent private and public interests, and the interests of justice, indicates that transfer of this matter to the United States District Court for the District of Massachusetts is appropriate.

### A.   Private Interest Factors

Under Section 1404(a), the private interests a court should consider include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (internal quotations omitted). The Court finds all of these factors are all either neutral or favor transfer.

With respect to factor one, ordinarily "a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum." *Windt v. Qwest Comm. Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008), *cert. denied*, 555 U.S. 1099 (2009). However, "[t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Liggett*, 102 F. Supp. 2d at 530. However, a plaintiff's

4

choice of forum "becomes substantially less important [where] he sues representatively on behalf of a class." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) (quoting *Firmani v. Clarke*, 325 F. Supp. 689, 691 (D. Del. 1971)). Indeed, where a plaintiff is suing on behalf of a putative class, courts have "afforded less deference to a [p]laintiff's choice of forum" because "in such actions the participation of the class representative is generally minimal" and "the potential members of the class will likely be scattered across the United States." Santomenno v. Transamerica Life Ins. Co., No. 11-736, 2012 U.S. Dist. LEXIS 44883, 2012 WL 1113615, at *5 (D.N.J. Mar. 30, 2012) (internal quotation marks and citations omitted); (internal quotation marks and citations omitted); *see also Prof. Adjusting Syss. of Am., Inc. v. Gen. Adjustment Bureau, Inc.*, 352 F. Supp. 648, 650 (E.D. Pa. 1972). Accordingly, this factor is neutral.[3] In contrast, factor two, Defendants' preference to litigate in Massachusetts weighs in favor of transfer, as all the Defendants are located in that state. *See* Thaler Decl. ¶¶ 2, 3.

---

[3] Relying on case law outside the Third Circuit, Plaintiffs also assert that their choice of forum is entitled to substantial deference, despite being parties foreign to this forum, because "'availability of appropriate legal assistance' is listed among the 'legitimate reasons' for selecting a forum." Pl. Br. at 8 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72-73 (2d Cir. 2001)). However, the case law on which Plaintiffs rely is not only not controlling on this Court, but it also concerned with a motion for dismissal on the basis of *forum non conveniens*, not a motion to transfer under Section 1404. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (noting that "§ 1404(a) transfers are different than dismissals on the ground of *forum non conveniens*" under which "District courts [are] given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*."); *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955) ("The *forum non conveniens* doctrine is quite different than Section 1404(a)") (citation omitted); *Windt v. Qwest Communs. Int'l, Inc.*, 544 F. Supp. 2d 409, 432 n.32 (D.N.J. 2008) ("*Forum non conveniens* and 28 U.S.C. § 1404(a), a change of venue provision, differ in their purposes, operation, and consequences; though they have common roots in legislation, they are entirely independent phenomena."), *aff'd*, 529 F.3d 183 (3d Cir. 2008), *cert. denied*, 555 U.S. 1099 (2009). Simply put, the availability of appropriate legal assistance is not one of the *Jumara* factors. *Solomon v. Continental Am. Life. Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered" under Section 1404); *see also Kirker Enterprises, Inc. v. Genosco*, No. 11-3195, 2011 U.S. Dist. LEXIS 137149, 2011 WL 6002520, at *3 n.2 (D.N.J. Nov. 29, 2011).

Factor three also weighs in favor of transfer, as all the operative facts of Plaintiffs' suit occurred in Massachusetts, where the alleged fraudulent statements were made. *See Franklin U.S. Rising Dividends Fund v. Amer. Intern. Group Inc.*, No. 13-5805, 2014 U.S. Dist. LEXIS 103482, 2014 WL 3748214, at *6 (D.N.J. July 29, 2014); *see also Danka Funding*, 21 F. Supp. 2d at 474 ("The plaintiff's choice, however, is entitled to less deference where the operative facts of a lawsuit occurred outside the forum selected by plaintiff."). While Plaintiffs may attempt to "ultimately seek information from the Company's employees engaged in product development, many of whom are located in the Freehold, New Jersey office," Pl. Opp. Br. at 10, that does not change the locus of this matter.

With respect to factor four, when "considering the 'convenience of the parties,' [d]istrict [c]ourts focus on the relative physical and financial condition of the parties." *Liggett*, 102 F. Supp. 2d at 533 (citing *Jumara*, 55 F.3d at 879). Here, neither party has asserted that litigating in the other forum would place an undue burden on them. Nonetheless, this factor weighs in favor of transfer. Although the record is silent as to whether lead plaintiff Sousa resides in New Jersey or elsewhere, the named-plaintiff, Ming Huang, is resident of Michigan, *see* Civil Cover Sheet, ECF No. 1-1, and all Defendants are located in Massachusetts. *See* Thaler Decl. ¶¶ 2, 3. Presumably, class members will be located throughout the country, and would have to travel to participate in the litigation no matter where this case is located, rendering New Jersey no more convenient than Massachusetts. *See Yang v. Odom*, 409 F. Supp. 2d 599, 607 (D.N.J. 2006); *Job Haines*, 936 F. Supp. at 231.

The convenience of the witnesses, factor five, must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Neither Plaintiffs nor Defendants have put forth evidence of any non-party witnesses that

would be unavailable for trial. Thus, this factor is neutral and does not weigh for or against transfer.

Finally, the Court must also consider "the location of books and records (only to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "The technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003). The Court can discern no reason why the evidence would be unavailable in either forum and, therefore, this factor carries "no weight." *Copley v. Wyeth, Inc.*, No. 09-722, 2009 U.S. Dist. LEXIS 62440, 2009 WL 2160640, at *6 (E.D. Pa. July 16, 2009); *Coppola v. Ferrellgas*, 250 F.R.D. 195, 200 (E.D. Pa. 2008).

Accordingly, the Court finds that all of the private interest factors are either neutral or weigh in favor of transfer; none favor New Jersey as a forum.

**B.      Public Interest Factors**

Under Section 1404, the public interests a court should consider include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879-80) (internal quotations omitted). The Court finds these interests are all neutral or weigh in favor of transfer.

Because this case arises out of a federal statute, there is no question that a judgment entered in either district would be enforceable (factor one) and that the judge in either forum would be appropriately familiar with the applicable law (factor six). *See Liggett Grp.*, 102 F. Supp. 2d at

537. Thus, these two factors are rendered neutral. Similarly, the parties agree that public interest factors two, four, and five are all neutral in this matter. *See, e.g.*, Pl. Opp. Br. 13, 14-15.

With regard to the relative administrative difficulty resulting from court congestion, factor three, the Court finds this factor favors transfer. As of June 30, 2015, the District of New Jersey had 10,435 total filings spread over 17 judgeships, for an average of 614 filings per judge. *See* District Courts-Combined Civil and Criminal Federal Court Management Statistics (June 30, 2015),http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3. The District of Massachusetts has 6,006 total filings, spread over 13 judgeships, for an average of 462 filings per judge. *Id.* These statistics demonstrate that the District of Massachusetts is less congested, with both a lower number of total filings and a lesser amount of cases per judgeship. Accordingly, this factor weighs in favor of transfer.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer to the United States District Court for the District of Massachusetts is **GRANTED**.

Dated March 21, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge